UNITED STATES DISTRICT COURT
<u>SOUTHERN DISTRICT OF NEW YORK</u>

SCHULTZ, et al.,,

                    Plaintiffs,

          -v-                                    No. 00 Civ. 0439 (LTS)

STONER, et al.,

                    Defendants.

———————————————————

<u>OPINION AND ORDER</u>

APPEARANCES:


HERMAN GEREL LLP                    PROSKAUER ROSE LLP
     By:  Stephen J. Herman, Esq.          By:  Elise Bloom. Esq.
820 O'Keffe Ave                                Myron D. Rumeld, Esq.
New Orleans, LA                         1585 Broadway
                                        New York, NY  10036



STEPHEN ALBRIGHT, ESQ.
368 Veterans Memorial Highway
Commack, NY  11725

*Attorneys for Plaintiffs*              *Attorneys for Defendants*




                    LAURA TAYLOR SWAIN, United States District Judge

This putative class action, in which individuals formerly employed at Texaco facilities in New Orleans seek benefits under retirement and savings plans formerly sponsored by Texaco (and now, following a corporate merger, sponsored by ChevronTexaco, Inc.), comes before the Court on the parties' cross-motions for summary judgment on certain claims asserted pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA").  In a 2001 decision, the Court dismissed as time barred Plaintiffs' benefit entitlement and discriminatory misclassification claims asserted, respectively, pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) and ERISA § 510 (29 U.S.C. § 1140).  The Court also dismissed Plaintiff Gladys Criddle's ERISA § 502(c) claims relating to the alleged denial of plan documents as well as Plaintiffs' claims against all named defendants other than Defendant Stoner, who was then the Plan Administrator.  See Schultz v. Texaco, 127 F. Supp. 2d 443 (S.D.N.Y. 2001) ("Schultz I").  In 2004, the Court held that Plaintiffs' ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)) claims for relief in connection with alleged breaches of fiduciary duty were timely, granted partial summary judgment in defendant Stoner's favor with respect to certain aspects of those claims, and granted partial summary judgment dismissing the ERISA section 502(c) claims of Plaintiffs Schultz and Jackson.  See Schultz v. Stoner, 308 F. Supp. 2d 289 (S.D.N.Y. 2004) ("Schultz II").

In Schultz II, the Court also denied defendant Stoner's motion for summary judgment dismissing the remaining aspects Plaintiffs' claim for relief pursuant to ERISA § 502(a)(3) in respect of alleged breaches of fiduciary duties, finding that Stoner, the former administrator of the plans in question, had failed to consider the relevant plan language in

making her determinations that Plaintiffs were ineligible for benefits and that it was thus

impossible to determine whether Stoner's actions had been factually or legally inconsistent with

plan documents – a critical element of the fiduciary breach claim.  <u>Schultz II</u> at 307.  The Court

remanded the benefit determination issue to the then Plan Administrator, and also invited an

application for reconsideration of the <u>Schultz I</u> dismissal of certain of Plaintiffs' benefit claims in

light of the further factual development of the record.  <u>Id.</u> at 308.  Plaintiffs thereafter filed a

Third Supplemental and Amended Complaint.  In its answer to that pleading, Defendants

asserted that ChevronTexaco Corp. is the current Administrator of the relevant employee benefit

plans, and ChevronTexaco has been added as a party defendant in its capacity as Plan

Administrator.

The Court has reviewed thoroughly the parties' extensive briefing on these cross-

motions for summary judgment and heard two rounds of oral argument.  For the reasons

explained below, Plaintiffs' application to reconsider their ERISA § 502(a)(1)(B) claims for

benefits under the provisions of the Retirement Plan of Texaco Inc. ("Retirement Plan") and the

Employees Thrift Plan of Texaco Inc. ("Thrift Plan") is granted, and their claims are reinstated

insofar as they relate to claims of entitlement to benefits under those plans as in effect on and

after January 1, 1995;  Plaintiffs' motion for summary judgment is granted with respect to the

restored aspects of their ERISA § 502(a)(1)(B) claims and their claims are remanded to the Plan

Administrator for benefit determinations;  ChevronTexaco must retain and compensate an

independent legal advisor for the Review Panel that will make the benefit determinations upon

remand; the Court awards Plaintiff  Weber $1400 against Defendant Stoner in respect of his

claim under ERISA § 502(c); Defendant Stoner's summary judgment motion is granted as to

Plaintiffs' ERISA § 502(a)(3) claims relating to the 1989 versions of the Retirement and Thrift

Plans; and the parties' summary judgment motions are denied in all other respects.  The parties

are to confer with each other, prepare certain position statements and appear for a conference

before the Court to discuss the class action aspects of this litigation.

BACKGROUND

The following material summary of undisputed facts assumes the reader's

familiarity with Schultz I and Schultz II.  Plaintiffs Schultz, Jackson, Weber and Criddle worked

at Louisiana facilities of Texaco Exploration and Production, Inc. ("TEPI") at various times

between 1991 and 1999.  Each was moved from direct TEPI employment onto, or hired directly

into, an arrangement in which, although they worked at the TEPI facility under TEPI supervision,

they were on the payroll of one or more separate, non-Texaco companies: MetroCareers, Inc.

("Metro"), Kelly Services, Inc. ("Kelly"), and/or Professional Temporaries of New Orleans

("Professional Temporaries") (collectively, "Third-Party Contractors").  Plaintiffs had no written

agreements with TEPI or Texaco.  The Third-Party Contractors had entered into written

agreements with TEPI to provide "contract personnel" (Metro) or  "extra labor personnel

services" (Kelly and Professional Temporaries).[1]  Metro's agreement with TEPI recited that

Metro was an "independent contractor"; the other two agreements recited that "the relationship of

the parties hereto is that of independent contracting parties."[2]  Notwithstanding their nominal

employment relationships with the Third-Party Contractors, Plaintiffs were supervised on a day-

---

[1]     Exhibits 14, 15 and 16 to October 15, 2004, Affidavit of Elise Bloom ("10/24 Bloom Aff.") (exhibits filed under seal).

[2]     Id.

to-day basis by Texaco and/or TEPI, which had the right to hire and fire them; they were paid fixed salaries; and Texaco and/or TEPI furnished them with their offices and office furniture, computers, telephones, and all other supplies and resources needed to complete their work assignments.[3]  Plaintiffs' time sheets were approved by Texaco.  Their holiday schedules, vacation times, hourly work weeks and salary increases were also approved by Texaco and/or TEPI, and they received training classes and programs from those companies.  Plaintiffs performed the relevant services only for Texaco and/or TEPI.  The work that they performed was part of the ordinary trade, business, and occupation of Texaco, TEPI and their employees, and they worked side by side with, performing the same or substantially similar job duties and under the same or substantially similar circumstances as, persons classified as full time employees of Texaco and/or TEPI.[4]  None of the Plaintiffs was provided with benefits under any of Texaco's employee benefit plans while they were on the payrolls of the Third-Party Contractors.

The Formal Text of the Retirement Plan of Texaco Inc., as amended in 1994 ("1994 Retirement Plan Text"), defines "Eligible Employee" as "[a]ny Employee who meets or can be expected to meet all of the Plan's eligibility requirements, described in Section 2.01 [of the Plan], before becoming a Member of the Plan."[5]  Section 1.30 of the 1994 Retirement Plan

---

[3]     Plaintiffs' Statement Pursuant to S.D.N.Y. Local Civil Rule 56.1 (Pl. 56.1 Stmt.) ¶¶ 12, 14, 15 and 16 and evidence cited therein.  Although Defendants' response to the statement purports to deny these facts and argues that they are irrelevant, Defendants proffer no evidence to the contrary.

[4]     Id. ¶¶ 17-22 and evidence cited therein.  Although Defendants' response to the statement purports to deny these facts and argues that they are irrelevant, Defendants proffer no evidence to the contrary.

[5]     Exhibit H to October 14, 2004, Affidavit of Elise Bloom ("10/2004 Bloom Affidavit"), § 1.26.

Text defines "Employee" in pertinent part as follows:

> Any individual who is employed by the Employer, including a Leased Employee, but excluding any individual characterized by or under contract with the Employer as an independent contractor.

The term "Employer" is used in the plan to refer to "[Texaco, Inc.] or any Subsidiary or

Affiliated Company which adopts this Plan with the consent of [Texaco, Inc.]."  (1994

Retirement Plan Text §§ 1.18 and 1.31.)  The Plan defines "Leased Employee" as follows:

> Any individual defined in Section 414(n) of the [Internal Revenue] Code.  Leased Employees do not include independent contractors or individuals who are not required to be treated as Employees under Section 414(n) of the Code and any applicable Regulations.

(Id. § 1.46.)[6]  "Member" is defined as

> An Employee or former Employee who (A) was an Employee on the first day of the month on or after the date he or she satisfied all of the eligibility requirements for membership in the Plan; (B) is either entitled to or may become entitled to an Accrued Benefit under the terms of the Plan; and (C) has not died or received all of the retirement Income to which he or she is entitled under the Plan.

(Id. §1.49.)

---

[6]     Section 414(n) of the Internal Revenue Code requires that "leased employees" be taken into account as employees of an employer for certain tax qualification purposes.  Subsection (n)(2) of the provision defines such persons as ones who are "not employee[s]" of the company receiving their services, whose services are provided to the company pursuant to an agreement between the company and a 'leasing organization,' and who meet certain other requirements. 26 U.S.C.A. § 414(n) (West Supp. 2008).  The determination of whether a person is an employee of the company receiving his or her services is, for this purpose, determined in accordance with common-law principles.  Burrey v. Pacific Gas & Elec. Co., 159 F.3d 388, 392-93 (9th Cir. 1998).  See also I.R.S. Notice 84-11, 1984-2 C.B. 469, 1984 WL 264668 at A-1 ("for purposes of certain employee benefit provisions, a 'leased employee' generally shall be treated as an employee of the person for whom such leased employee performs services (the 'recipient' of the services) even though such individual is a common law employee of the leasing organization").

The Eligibility and exclusion provisions of the Plan read in pertinent part as follows:

> Section 2.01 **Eligibility**.  Membership in this Plan is available to any Employee who meets the criteria specified in Sections 2.01(A), 2.01(B) and 2.01(C), below:
>
> (A)   **Eligible Employee Classification**.  To be eligible for membership in this Plan, the Employee must be within an eligible classification of Employees, designated as eligible for this Plan by the board of Directors of an Employer from time to time, and
>
> (B)   **Eligible Service Assignment**.  The Employee must be assigned to service:
>
> (1)   in the United States and not represented by a labor organization . . . ; and
>
> (C)   **Eligibility Service**.  The Employee must be credited with one year of Eligibility Service.
>
> **Section 2.02.  Excluded Employees.**  Membership in this Plan is not available to any Employee who does not meet the criteria listed in Section 2.01 or who is a Leased Employee.

(Id.)[7]  The corresponding provisions of the Formal Text of the Employees Thrift Plan of Texaco Inc., as amended in 1994 (the "1994 Thrift Plan Text") are substantively identical.  (Ex. M to 10/2004 Bloom Aff.)

Employees who were on TEPI's payroll participated in the Retirement Plan and the Thrift Plan at all relevant times.  The record does not include evidence of any specific TEPI board resolution or other corporate action specifying particular eligible classes of TEPI employees, and the plans themselves do not include specifications as to the payroll arrangements

---

[7]   From at least January 1, 1989, to the effective date of the 1994 amendments, the eligibility section of the Retirement Plan text provided that "Employees whose services are received by an Employer pursuant to a leasing agreement between the Employer and a third party shall not be deemed within a classification of eligible Employees."  (Ex. M to 10/2004 Bloom Aff. § 1(a).)  The "Employee" definition in the 1989 version of the Plan did not include the "characterized by or under contract with an Employer as an independent contractor" carve-out.  The corresponding provisions of the 1989 version of the formal text of the Thrift Plan were substantively identical.  (Ex. L to 10/2004 Bloom Aff.)

through which eligible members are compensated.

All four of the named Plaintiffs were on Third Party Contractor payrolls, and had been denied Texaco benefits, prior to the adoption of the 1994 Retirement and Thrift Plan amendments.  They were not provided with information about any of the Texaco plans until after they requested information in 1999.  Defendant Stoner denied claims for Retirement Plan and Thrift Plan benefits by Plaintiffs Schultz and Weber in that year;[8] her letters denying appeals by Plaintiffs Schultz and Weber asserted that the official plan documents provided that "[y]ou are not eligible to join this plan if you are, in the sole discretion of the Plan Administrator, characterized or under a contract as an independent contractor or rendering services to the company pursuant to an agreement between the company or a participating company and a third party."  Schultz II at 294.  The cited phrase did not, however, appear in any of the relevant plan documents.  Stoner was, instead, quoting from a summary plan description.  See id.  In her deposition taken in connection with this litigation, Stoner testified that she had consulted with Texaco's Legal Department before issuing her decision, and that she had denied the claims because she "interpreted [Plaintiffs'] employment relationship with MetroCareers and other various parties as being characterized by [sic], in the language of the Plan, and therefore concluded they were not employees."  (Dep. of Janet L. Stoner at 59, 67; see also, e.g., id. at 52-53 ("The individuals . . . were employed by agencies that had a relationship with Texaco and it's my interpretation that those individuals were thus characterized by, and therefore excluded from the Plans, as they were employees of the agencies.").)  Stoner did not examine TEPI's

---

[8]     Plaintiff Jackson did not appeal the initial denial of his benefit claim by a Texaco Human Resources manager, and there is no evidence that Plaintiff Criddle made any application for benefits.  Schultz II at 294.

agreements with the Third-Party Contractors and did not have any idea as to how the law defined someone as an employee, a leased employee or an independent contractor.  (Id. at 55, 59, 61, 62.) During Stoner's tenure as Plan Administrator, Texaco's Human Resources department provided benefit plan enrollment information to persons hired or classified as regular full time employees of Texaco.  (Id. at 47-48.)

Texaco, Inc., was acquired by Chevron Corporation in 2001, whereupon Chevron Corporation was renamed ChevronTexaco Corporation.  The Texaco Retirement Plan was merged into the ChevronTexaco Retirement Plan, and the Texaco Thrift Plan was merged into the ChevronTexaco Corporation Employee Savings Investment Plan, effective July 1, 2002. (Def. 56.1 Stmt. ¶¶ 3,4 and evidence cited therein.)  According to an affidavit proffered by Defendants, the eligibility language of the merged plans differs from that of the pre-merger Texaco plans, as do the merged plans' provisions regarding administration and benefit claims. ChevronTexaco is the Plan Administrator for the merged Retirement and Thrift Plans.  (Aff. of Richard Remley, Esq. ¶ 10.)  The affidavit does not quote the particular administration language of the merged plans, nor has the text of those plans been provided to the Court, but the affidavit represents that the claims fiduciary for the merged Retirement and Thrift Plans is "a 'Review Panel' appointed by the Plan Administrator."  (Id.)  The affidavit goes on to describe the Review Panel appointment process that ChevronTexaco implemented following the Schultz II remand for consideration of Plaintiffs' claims, characterizing that process as consistent with "long-standing past practice."  (Id. ¶¶ 11-13.)  The affidavit describes the following claims determination process as one historically used by Chevron and implemented in connection with the remand in this case.  ChevronTexaco designated a Review Panel made up of three ChevronTexaco Human

Resources Department employees who were not then employed in the employee benefits

function, to perform the determination required by the remand aspect of <u>Schultz II</u>.  Although the

affidavit does not assert specifically that the merged plans include provisions granting the

Review Panel discretionary authority to interpret and apply the provisions of the plans, the

parties' legal arguments on this motion practice are premised on the existence of such provisions

and the Court therefore assumes for purposes of this motion practice that it is undisputed that the

merged plans include such provisions.

    This Review Panel was provided with Plaintiffs' position statement and exhibits

(including affidavits of the four named Plaintiffs detailing aspects of their work histories and

relationships with TEPI and with the Third-Party Contractors) as well as a supplemental

submission by Plaintiffs' counsel.  The panel was also given an unsigned "Position statement of

the Plan Administrator of the ChevronTexaco Corporation Retirement Plan and the

ChevronTexaco Corporation Employee Savings and Investment Plan Regarding Administrative

Review Remand to a Review Panel Regarding Alton C. Schultz, Jr., Elaine B Jackson, Gladys

Criddle, and Harold J. Weber, Jr.," including voluminous exhibits, that had apparently been

prepared within the ChevronTexaco Legal Department (the Court will refer to this document,

which is annexed to the 10/2004 Bloom Affidavit as Ex. LL, as the "CVX PA Pos. Stmt.").  The

CVX PA Position Statement included extensive arguments as to why Plaintiffs' claims for

benefits under the plans should be denied, advised the Review Panel that "common law"

employee status was irrelevant to their determination and that "what [Defendant] Stoner

concluded in her original consideration or what she may have said in her deposition are in no way

binding on this Review Panel and have minimal (if any relevance) [sic] remaining relevance."

(Ex. LL to 10/2004 Bloom Aff.)  Among the exhibits submitted to the Review Panel with the

Plan Administrator's Position Statement were an affidavit by an individual named Glenn

Phillips, who asserted that he had been employed in Texaco's Human Resources Department

from 1984 until the merger with Chevron, and that,

> Based on [his] personal experience and knowledge as a Texaco Human Resources
> employee, a worker who was not a formal Texaco employee but whose services were
> obtained by Texaco either through a direct contract with the individual or through a third
> party contracting agency were both [sic] commonly referred and characterized within
> Texaco as independent contractors.  In terms of such common referral and
> characterization as independent contractors, no distinction was made between an
> individual retained directly by contract and an individual retained by contract through a
> third-party agency.  Rather, if workers were not denominated and characterized as formal
> Texaco employees, they were commonly referred to and characterized within Texaco by
> the term 'independent contractor.'

(Aff. of Glenn Phillips at ¶ 6, Ex. OO to Plan Administrator's Position Stmt.).  The Plan

Adminsitrator's Position Statement was also accompanied by affidavits from Texaco Legal

Department personnel who asserted that they had participated in the preparation of the 1994 plan

amendments and that the "characterized by or under contract with the Employer as an

independent contractor" language in the 1994 versions of the Retirement and Thrift Plans was

"intended to exclude from eligibility individuals who provided services to Texaco or one of its

subsidiaries or affiliated companies through a third-party staffing agency even if, for some

reason, those individuals were able to satisfy the eligibility criteria specified [in the plan] or if

they did not satisfy the criteria for 'Excluded Employees' set forth in [the plan]."  (Aff. of Rex

Iacurci at ¶ 14, Ex. FF to CVX PA Pos. Stmt; see also Aff. of Peter Stathis, Ex. GG to CVX PA

Pos. Stmt.)

The Plan Administrator's Position Statement did not proffer any advice to the

Review Panel as to the fiduciary nature of its assignment or the requirements of the fiduciary

duty provisions of ERISA, but it did encourage the Panel to reject "purported highly technical

legalisms" in considering Plaintiffs' arguments as to the meaning of the 1994 Plans' phrase

"characterized [by TEPI] as an independent contractor."  (See Ex LL at 11-12.)  The Review

Panel did not seek out or receive any other legal advice and, when asked at deposition about such

a provision, the panel member designated by ChevronTexaco to testify gave the following

responses to questions relating to ERISA's exclusive benefit requirement:[9]

> Q       And [the panel's decision] was for the exclusive benefit of plan participants and
>         plan beneficiaries?
> A       I don't know.  I'm not sure I understand what you mean by that question.
> Q       Well, when you're reviewing the facts and the plans, you're doing that for the
>         exclusive benefit of plan participants and beneficiaries?
> A       I don't know who all of those – I don't know.
> Q       Well, are you doing it for your employer, ChevronTexaco, who has asked you to
>         do it?
> A       Correct.

(30(b)(6) Deposition through Rhonda Morris at 91.)

        The Review Panel's five-page "Report of Findings" refers to its subject matter as

"the appeal for additional benefits under the Retirement Plans and Thrift Plans with respect to

periods during which [Plaintiffs] provided services to Texaco or its affiliates while on the payroll

of a third-party entity," and opens with a list of the documents on which "[t]he panel based its

conclusions."  (Ex. RR to 10/2004 Bloom Aff.)  Following two sections summarizing briefly the

position statements of the Plaintiffs, on the one hand, and of ChevronTexaco as Plan

Administrator, on the other, the Report's "Conclusion and Recommendations" read in their

---

[9]       Section 404(a) of ERISA provides in pertinent part that a fiduciary is to
"discharge his duties with respect to a plan solely in the interest of the participants
and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to
participants and their beneficiaries."  29 U.S.C.A. § 1104(a) (West 1999).

entirety as follows:

> The matter for review by this panel is 'The issue of eligibility of the named Plaintiffs for benefits under the Retirement Plan and Thrift Plan with respect to periods during which they provided services to Texaco or its affiliates while on the payroll of a third-party entity is remanded to the current Plan Administrator for further consideration.  The Plan Administrator shall report his determination to the parties and the Court in writing within 60 days from the date of this Opinion and Order.'

In general, the Plans provide two definitions that warrant consideration under them. Employee and Eligible Employee/Member are defined and used to clarify that under the Plans some employees are excluded from participation in the Plans.  While employees include leased employees (within the meaning of Section 414 of the Internal Revenue Code), a member in the Plan or those employees eligible to participate in the Plans specifically exclude leased employees, which are employed under third party contracting agreements.

The formal text of the Retirement Plan of Texaco Inc. (1989) provides in Article II, Eligible Employee Section 1.(a)

> **'Employees whose services are received by an Employer pursuant to a leasing agreement between the Employer and a third party shall not be deemed with [sic] a classification of eligible Employees.'**

The formal text of the Employee Thrift Plan of Texaco Inc. (1989) provides in Section II Eligibility.

> **'Employees whose services are received by a Participating Employer pursuant to a leasing agreement between the Participating Employer and a third party shall not be deemed within a classification of eligible employees. Notwithstanding the foregoing, leased employees (within the meaning of Code Section 414(n)) are not eligible to participate in the Plan, but the term "employees" shall include leased employees with [sic] the meaning of Code Section 414(n) (other than leased employees covered by a plan described in Code Section 414(n)(5))'**

The formal text of the Retirement Plan of Texaco Inc. restated as of December 31, 1994. Section 2, Eligibility and Participation, provides in Section 2.02. Excluded Employees.

> **Membership in this Plan is not available to any Employee who does not meet the criteria listed in Section 2.01 or who is a Leased Employee.**

The formal text of the Employee Thrift Plan of Texaco Inc. Restated as of December 31, 1994 provides in Section 2.02.  Excluded Employees.

**'Participation in this Plan is not available to any Employee who does not meet the criteria listed in Section 2.01 or who is a Leased Employee.**

The Plans do not define common law employees and as such is not a consideration in the panel's determination of eligibility under the Plans.

Contracts between the Agencies (Leasing Organizations) and the Company (TEPI) covering the time frame from 1991 to 1999 were in place.  The leasing agencies were not Participating Affiliates of the Company.  Responsibilities of the Agencies included payroll management, deducting for taxes, and providing for benefit, retirement and savings plans for their respective employees.

Affidavits of Plaintiffs provided the primary evidence reviewed to determine their contracts with Leasing Organizations, except for those provided by Schultz.  Affidavits stipulated that all Plaintiffs were paid by Leasing Organizations.  All Plaintiffs during qualifying time period, 1991-1999, were either independent contractors or third party contractors working for the Company.  In summary, they were employees of a third party 'independent contractor' and not eligible employees of a Participating Company or Company Affiliate.  Mr. Schultz signed documents that he was an employee of the leasing agency and declined benefits with the same agency.  Mr. Weber, a former Company employee from 1966-1984, is eligible under a plan in place prior to 1989.  However, Mr. Weber's subsequent independent contractor or leased employee relationship with the Company does not make him eligible for the 1989 and 1994 Plans under review.

Code section 414 was reviewed in the context of determining eligibility under the Plans.  While the panel does not purport to be experts on tax code, our underlying understanding is that leased employees provided by third party agencies can be excluded from plan participation.  Referring to IRS Memorandum dated July 28, 1999 on Exclusion of Participants by Class or Category, 'Plans may exclude from plan participation employees who are either (i) not reported on the payroll records of affiliated companies as common law employees (even if a court or administrative agency determines that such individuals are common law employees and not independent contractors).'

The review panel recommends denial of this plan.


(Ex. RR to 10/2004 Bloom Aff.)

The parties engaged in further discovery after the issuance of the Report,

including a Rule 30(b)(6) deposition of the Review Panel by Rhonda Morris, one of the Review

Panel members.  Morris testified that any distinction between independent contractors and third

party contractors was not important to the Review Panel's decision "[b]ecause . . . the individuals were working for an agency that did work for Texaco, and they were paid by this agency, so that's who – those are the institutions we considered their employers."  (Ex. GG to 10/2004 Bloom Aff. at 32.)  She later reiterated: "An employee has to be employed by the employer, which was Texaco.  Those documents [i.e., contracts between Texaco and the third party contracting firms], to us, were indicative of the fact that they were not."  (Id. at 39.)  Morris also testified that the Review Panel did not discuss the Plan Administrator's contention, based on the Phillips Affidavit, that third-party contractor employees were commonly referred to at Texaco as "independent contractors," and that the Review Panel's determination was "predicated on a conclusion that they were employed by a third-party agency" rather than a conclusion that Plaintiffs were independent contractors.  (Id. at 47, 72.)

D<span style="font-variant:small-caps">ISCUSSION</span>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted in favor of a moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  Evidence must be viewed in a light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party.  Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008).  In the summary judgment context, a fact is material "if it 'might affect the outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the evidence is such that a

reasonable jury could return a verdict for the nonmoving party.'" Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (alteration in original)). "[M]ere conclusory allegations, speculation or conjecture" will not provide a sufficient basis for a non-moving party to resist summary judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996). On cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Schwabenbauer v. Bd. of Educ. of Olean, 667 F.2d 305, 314 (2d Cir.1981).

Timeliness of Section 502(a)(1)(B) Claims for Benefits

In Schultz I the Court (Parker, J.) held that Plaintiffs' claims for benefits under ERISA section 502(a)(1)(B), which provides a cause of action to recover benefits due under a plan, were untimely under the applicable six-year statute of limitations: Plaintiffs had been apprised in 1991 that they would not be covered under Texaco's benefit plans and this litigation was not commenced until the year 2000. The Court held that Plaintiffs' section 502(a)(1)(B) claims for benefits due

> accrued in late 1990 or early 1991, when plaintiffs allege that they were wrongfully removed from either Texaco or TEPI's payroll, placed on the payroll of various temporary employment agencies, and erroneously classified as independent contractors 'for the sole or predominant purpose of preventing plaintiffs from participating in Texaco and/or TEPI's ERISA covered benefits plans [because i]t was at this time that plaintiffs knew that they would not be eligible to participate in, or receive benefits from, the Plans

and suffered the injury which forms the basis of their denial of benefits claim, and it is at
this time that the repudiation, which is the basis for this lawsuit, was known, or, at a
minimum, should have been known, to plaintiffs.

Schultz I, 127 F. Supp. 2d at 448, citing Carey v. IBEW Local 363 Pension Plan, 201 F.3d 44,

47-50 (2d Cir. 1999).  In Carey, the Second Circuit held that "an ERISA claim accrues upon a

clear repudiation by the plan that is known, or should be known, to the plaintiff – regardless of

whether the plaintiff has filed a formal application for benefits."  Carey, 201 F.3d at 48.

Factual information presented in connection with the Schultz II motion practice

made it clear, however, that the 1994 plan amendments' elimination of the language specifically

excluding persons working under third-party contracts from eligible classifications of employees

post-dated the 1991 "repudiation" events with respect to Plaintiffs, and that Plaintiffs did not

learn of the plan amendments until 1999.  The Court invited Plaintiffs to request reconsideration

of the dismissal of their claims premised on the 1994 amendments.  Plaintiffs have done so, and

the Court finds that its application of the repudiation principle of ERISA benefit claim accrual in

connection with the 1994 amendments was unwarranted and inconsistent with the disclosure and

civil litigation provisions of ERISA.

Here, the Texaco plan administrators never provided information regarding the

plan amendments to Plaintiffs, who were continuing to work in TEPI facilities.  Plaintiffs had no

reason to suspect that any changes in the plans' terms might have been made that could have

affected their ability to assert claims for benefits.  To hold that their time to assert such claims

had begun to run three years before the changes were ever made, and ran out before they ever

learned of the changes, would be to permit plan sponsors and administrators to conceal benefit

plans or improvements from their employees and then invoke the statute of limitations as a bar to

payment of the benefits if the employees ever managed to learn of them.  Such a holding would

be contrary to the spirit of ERISA's provisions requiring timely and accurate disclosure of plan

terms to participants and beneficiaries[10] and defeat the purpose of the civil action provisions of

the statute, which give persons with colorable claims to benefits the right to press those claims in

court.

Accordingly, Plaintiffs' application for reconsideration of the dismissal of the

1994 plan claims is granted, and the Court hereby vacates its decision in Schultz I to the extent

that it dismissed as untimely Plaintiffs' claims for benefits under ERISA section 502(a)(1)(B) (29

U.S.C. § 1132(a)(1)(B)) insofar as they relate to the 1994 versions of the Retirement Plan and

Thrift Plan.

Review Panel's Decision Following Schultz II Remand of Plaintiffs' Benefit Claims

As the Court explained in Schultz II, a remand to the then-current Plan

Administrator was necessitated by the failure of Defendant Stoner, the Plan Administrator who

made the original benefit denial decisions, to construe the language of the formal texts of the

Plans in making her determinations.  The plans committed discretion to construe the plans' terms

to the Plan Administrator in the first instance and a reviewing court is bound to defer to those

determinations in the absence of an abuse of discretion.  Accordingly, the Court could not

determine whether Stoner's failure to extend plan information and/or benefits to Plaintiffs

constituted a failure to administer the plans in accordance with their terms absent an initial

determination by the administrator of the significance of those terms with respect to Plaintiffs'

---

[10] See, e.g., ERISA §104(b) (29 U.S.C.A § 1024(b) (West 2008), which requires
plan administrators to furnish plan participants and beneficiaries with summaries
of plan terms and modifications within certain time limits.

contentions that they were eligible plan participants.  <u>Schultz II</u>, 308 F. Supp. 2d at 303, 307-08.

As noted above, the parties have assumed that the merged ChevronTexaco plans' administrative provisions governed the procedure for determination of the benefit eligibility question on remand, and that those plans provide that the Review Panel has discretion to construe the substantive Texaco plan provisions that are at issue here.

As the Supreme Court recently reiterated in <u>Metropolitan Life Ins. Co. v. Glenn</u>, ___ U.S. ___, 128 S. Ct. 2343, 2347-48 (2008), four principles govern the judicial review of benefit determinations by fiduciaries or plan administrators under ERISA § 502(a)(1)(B):

> (1) In 'determining the appropriate method of review,' a court should be 'guided by principles of trust law'; in doing so, it should analogize a plan administrator to the trustee of a common-law trust; and it should consider a benefit determination to be a fiduciary act (<i>i.e.,</i> an act in which the administrator owes a special duty of loyalty to the plan beneficiaries). . . .
>
> (2) Principles of trust law require courts to review a denial of plan benefits 'under a <i>de novo</i> standard' unless the plan provides to the contrary. . . .
>
> (3) Where the plan provides to the contrary by granting 'the administrator or fiduciary <i>discretionary authority</i> to determine eligibility for benefits,' . . . '[t]rust principles make a <i>deferential standard</i> of review appropriate,' . . . .
>
> (4) If 'a benefit plan gives discretion to an administrator or fiduciary who <i>is operating under a conflict of interest,</i> that conflict must be <i>weighed as a 'factor</i> in determining whether there is an abuse of discretion . . . .

(Citations omitted.)  The <u>Glenn</u> Court observed that a conflict of interest implicating the fourth principle clearly arises "where it is the employer that both funds the plan and evaluates the claims."  <u>Id.</u> at 2348.  In such circumstances, "[t]he employer's fiduciary interest may counsel in factor of granting a borderline claim while its immediate financial interest counsels to the contrary.  Thus, the employer has an 'interest . . . conflicting with that of the beneficiaries,' the

type of conflict that judges must take into account when they review the discretionary acts of a trustee of a common-law trust." Id. (citations omitted).  Such conflict is one of "several different considerations" that are weighed together in determining whether discretion has been abused, "any one [of which] will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." Id. (citations omitted).

"Under the deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning without reason, unsupported by substantial evidence or erroneous as a matter of law. . . .Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control . . .  Nevertheless, where the administrator imposes a standard not required by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, its actions may well be found to be arbitrary and capricious." McCauley v. First Unum Life Ins. Co., 551 F.3d 126, 132 (2d Cir. 2008) (internal quotation marks and citations omitted).

Here, ChevronTexaco is the sponsor, plan funder and Plan Administrator.  The individuals it selected to sit as a Review Panel and make the interpretive determinations relevant to this case were its employees.  Thus, there is an inherent conflict of interest.  ChevronTexaco's selection of persons not versed in employee benefits, its failure to provide them with advice regarding their fiduciary obligations, and its strongly argumentative submission in opposition to the benefit claim suggest that the claims determination structure employed upon remand was one designed to favor the company's perspective rather than that of those claiming rights as plan

participants or beneficiaries.  The Court takes these facts into account in weighing the degree of
deference to the Review Panel's decision that is warranted in this case.

Eligibility Under Terms of 1989 Plans

Although it is not clear that the Review Panel embraced fully the nature of its
assignment (as shown above, it referred to its work as the review of an "appeal" and concluded
its report with a "recommendation" of "denial" of "this plan"), the aspect of its findings that is
salient to the question of Plaintiffs' eligibility for benefits under the provisions of the Plans that
were in effect from 1989 until the effective date of the 1994 amendments is both consistent with
those plans' terms and supported by substantial evidence.  The Review Panel found that the
Plaintiffs were "either independent contractors or third party contractors working for the
Company" during the relevant period.  While the conclusion that they were independent
contractors is not consistent with the record or the law, it is in fact undisputed that their services
were provided pursuant to, or in connection with, contracts between TEPI and the Third-Party
Contractors.  The 1989 Plans provided that "Employees whose services are received by a
participating Employer pursuant to a leasing agreement between the participating Employer and a
third party shall not be deemed within a classification of eligible employees."  (1989 Thrift Plan
Text § II  ¶ 1, Ex. L to 10/2004 Bloom Aff.; 1989 Retirement Plan Text Art. II § 1(a), Ex. G to
10/2004 Bloom Aff.)  The plans provide no specific definition of "leasing agreement"; a
common sense view of the Third-Party Contracts as ones pursuant to which employees on the
contractors' payrolls are leased or assigned to the Texaco entity is well within the range of
rational interpretations of the term.  Cf. Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342 n.3
(holding that Internal Revenue Code definition of "leased employee" did not govern

interpretation of plan where plan provided its own definition of the term).  The evidence

supporting the Review Panel's conclusion as to exclusion under this provision is so clear that the

questionable elements of the structure of the review panel procedure and the adversarial role

played in the process by the Plan Administrator do not warrant diminution of the deference

afforded to this decision, which is consistent with the facts, the terms of the plan and the

applicable law.  In light of this conclusion as to the 1989 Plans' participation provisions,

defendant Stoner is entitled to summary judgment as a matter of law on Plaintiffs' ERISA §

502(a)(3) claims relating to the administration of those plans.

        1994 Plan Eligibility Determination

                The question of deference to the Review Panel's conclusion with respect to the

1994 versions of the plans is a more complex one.  The 1994 amendments removed the "third

party contract" exclusion language from the plans and added language excluding persons

"characterized by or under contract with" the participating employer.  See 1994 Retirement Plan

§ 1.30, Ex. H to 10/2004 Bloom Aff.; 1994 Thrift Plan § 1.29, Ex. M to 10/2004 Bloom Aff.)

The Review Panel's discussion does not specifically parse the 1994 contract language or, insofar

as its ultimate conclusion was to "recommend denial of this plan," even embrace and apply the

interpretive discretion the parties assume is granted to the panel by the ChevronTexaco plans.

                At oral argument, Defendants' counsel proffered that the Review Panel was

making a recommendation that this Court decide in Defendants' favor.  If this is the case, the

Court could well be justified in finding that the Review Panel had abdicated its decisional

responsibility and thus any entitlement to deference.  It is not necessary for the Court to go that

far in determining whether to let stand the Review Panel's determination that Plaintiffs are not

covered plan participants, however, because the "Conclusion and Recommendations" of the Review Panel, insofar as they relate to the application of the 1994 Texaco Retirement and Thirft plan provisions, are arbitrary and capricious as a matter of law.

A fiduciary's benefit decision must be rejected as arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." McCauley, 551 F.3d at 132 (internal quotation marks omitted).  The Review Panel appears to have concluded that Plaintiffs were not entitled to benefits because they were "either independent contractors or third party contractors working for the Company" and thus were not "eligible employees of a Participating Company or Company Affiliate" because "leased employees provided by third party agencies can be excluded from plan participation."  (Ex. RR to 10/2004 Bloom Aff. at fourth and fifth unnumbered pages.) To the extent the Review Panel concluded that Plaintiffs were "independent contractors," its determination is without reason and entirely unsupported by evidence.  The evidence before the panel demonstrated that the Plaintiffs were on the payrolls of the Third-Party Contractors and did not contract directly with Texaco or TEPI, and that they were at all times subject to Texaco and/or TEPI's supervision and direction in their work, receiving all necessary tools and equipment from Texaco and/or TEPI, and were paid regular predetermined salaries.  Such employment characteristics are indicative of employee, rather than independent contractor, status.  See I.R.S. Rev. Rul. 74-41, 1987 WL 419174 (1987).

Nor did the panel conclude that Plaintiffs were "characterized as" independent contractors on the basis of the Phillips affidavit, which was the only evidence before the Panel from which such a conclusion could conceivably have been drawn: Ms. Morris admitted in her deposition that the panel did not even discuss the affidavit's conclusory assertion that third party

contractor employees were referred to as "independent contractors."  (Morris Dep. at 71-72, Pls.'
Ex. 31. )  As to leased employee status, although the Review Panel correctly observed that an
employee plan can provide an exclusion for leased employees, the Panel disclaimed "tax code"
expertise and thus failed to apply the particular terms of the plans in question, which specifically
defined "leased employees" by reference to section 414(n) of the Internal Revenue Code.  That
Code section, as explained above, defines leased employees as persons who are, among other
things, common-law employees of the leasing company rather than of the employer who receives
their services.  See supra note 6 and accompanying text.

There was no evidence before the Review Panel, nor is there any in the entire
record on these motions, from which a rational fact finder could draw the conclusion that
Plaintiffs were common-law employees of the Third-Party Contracting agencies.  To the
contrary, the uncontradicted factual assertions in Plaintiffs' affidavits, which the Review Panel
claimed it had relied upon, demonstrate clearly that Plaintiffs were common-law employees of
TEPI and/or Texaco.  Internal Revenue Code § 414(n)'s definition of "leased employee"
specifically excludes persons who are common law employees of the recipient of their services.
See supra note 6.  Compare Wolf v. Coca-Cola Co., 200 F.3d 1337, 1343 (11th Cir. 2000)
(common-law employee retained through third party agency properly excluded as leased
employee where plan did not incorporate Internal Revenue Code definition and instead defined
leased employees as "individuals who perform services for the Company under an agreement
with a leasing organization") with Burrey v. Pac. Gas & Elec. Co., 159 F.3d 388, 392-94 (9th
Cir. 1998) (determination of leased employee status for purposes of plan that excluded "'leased
employee[s],' as defined in section 414(n)(2) of the Internal Revenue Code" must be made in

accordance with section 414(n) criteria, including threshold determination of common law employee status).

Accordingly, any conclusion that Plaintiffs are ineligible for Plan participation because they were independent contractors or leased employees of TEPI and/or Texaco during the relevant period is without legal or factual foundation, and thus, as a matter of law, is arbitrary and capricious and an abuse of discretion.

Nor does the Review Panel's finding that Plaintiffs were on the payroll of the Third-Party Contractors rather than that of TEPI and/or Texaco provide a basis upon which a rational fact finder could determine that they were properly excluded from the Texaco Plans. The plans here at issue have no specific requirement that a participating employee be on Texaco's direct payroll.  The Review Panel's focus on the fact that Plaintiffs were on the payrolls of Third-Party Contractors is thus misplaced and its conclusions in that regard are not determinative of the issue of Plaintiffs' eligibility to participate in the plan.  Defendants' reliance before this Court on denials of ERISA plan eligibility claims in decisions such as <u>Downes v. J.P. Morgan Chase & Co.</u>, No. 03 Civ. 8991, 2006 WL 1233939 (S.D.N.Y. May 8, 2006), in which the plans in question specifically required that participants be on Chase's payroll as salaried employees, is unavailing.

These fundamental legal and factual flaws in the Review Panel's analysis, standing alone and considered together with the structural conflict factors described above and the skewed nature of the actions by ChevronTexaco in its Plan Adminstrator capacity, warrant rejection of the Review Panel's conclusions with respect to Plaintiffs' eligibility under the terms of the 1994 Retirement Plan and Thrift Plan as arbitrary, capricious and an abuse of discretion.

As explained above, the undisputed factual record makes it clear that the leased employee and independent contractor exclusion provisions of the Plans are inapplicable to these Plaintiffs.  Furthermore, the only putative evidence in the record supporting the notion that Plaintiffs were "characterized" as independent contractors is insufficient to support a rational fact finder's conclusion that such an exclusion is applicable here.  The language of the plans speaks of such characterization by "the Employer."  None of the documentary evidence relating to TEPI's relationship with the Third-Party Contractors uses the term in relation to employees retained under those contracts, nor is there any use of the term in the personnel file materials of record.  Neither of the administrative decisions on these benefit claims made any finding that TEPI or Texaco so characterized these individuals.   Defendant Stoner, who had herself been a business manager at TEPI prior to taking on the role of Plan Administrator, did not invoke any such cultural terminology in her written decision or even in her deposition.  Rather, she relied on "third party"  agreement language from summary plan descriptions in denying benefits and, in her deposition, stated only that *she* construed Plaintiffs' third party contractor employment relationship as "characterized by." (See, e.g., Ex. V to 10/2004 Bloom Aff.; Stoner Dep. at 61 (Pls.' Ex. 5).)  The Review Panel also declined to rely on the characterization language, with the panel member who testified as a Rule 30(b)(6) witness specifically disclaiming even the ability, notwithstanding Chevron's submission of the Phillips Affidavit to the panel, to have made a finding that Plaintiffs had been so characterized. (Morris Dep. at 77, Pls.' Ex. 31.)  In light of the nature of this record, conclusory allegations by a former Texaco Human resources employee, who does not even claim to have been employed in the facilities in which Plaintiffs worked, that workers whose services Texaco retained through third-party contracting agencies  "were . . .

commonly referred to and characterized within Texaco as independent contractors" is insufficient to raise a triable issue of fact as to whether Plaintiffs were "characterized by" TEPI or Texaco as independent contractors.[11]

Nor is ChevronTexaco's proffer that the plans have always been administered, even after the 1994 amendments, to exclude third party contractor payroll workers, sufficient to frame a genuine issue of material fact.  While extrinsic evidence may be considered to construe ambiguous plan terms, it is not admissible to contradict or vary the language of the plan.  ERISA requires that plans be administered in accordance with their terms.[12]  The terms of the plans here at issue do not exclude workers solely on the basis of employment through Third Party Contractor payrolls.  Indeed, ChevronTexaco's proffer, and the fact that no change in SPD language or plan communication and enrollment procedures were made during the relevant period to reflect the change in plan terms, implicates the fiduciary breach and equitable remedy elements of Plaintiffs' claims.

Finally, it is implicit in the focus of defendant Stoner and the Review Panel on the exclusion provisions of the eligibility sections of the plans that the underlying definitions of employees and eligible classifications embrace a broad swath of individuals employed at the

---

[11]    Given the lack of any evidence that the "characterized by" exclusion is applicable to Plaintiffs, it is unnecessary for the Court to address Plaintiffs' contention that the application of such an exclusion would violate the ERISA requirement that plans be maintained in writing and that exclusions must have legitimate business bases.

[12]    An ERISA fiduciary must discharge her duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."  29 U.S.C.A § 1104(a)(1)(D) (West 1999).

participating facilities.  This interpretation is consistent with the language of the plans, which takes a carve-out approach to the definition of membership or participation eligibility.  There would be no reason to carve out, for instance, independent contractors, if only traditional full time employees were included in the "employee" definition in the first place, nor would there have been a reason explicitly to carve out third party contract workers in the 1989 Plan if persons who were not on the direct payroll of a participating company were not potentially eligible employees in the first place.   The plans' express stipulation that Leased Employees (who are by definition on the payrolls of other entities) are included in the base group of Employees, and specific carve-out of such employees for eligibility purposes, provides further confirmation that the term "Employee," as used in the Plans, was not limited to persons employed directly by Texaco or its affiliates.  The language of the plan, and the administrators' construction of it, is consistent with an interpretation of the term "employee" as used therein that is congruent with the use of the term in the statute, which encompasses persons who are common law employees of the employer, regardless of whether they are nominally on the payroll of another or denominated as independent contractors.  See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (adopting common law test for determining who qualifies as an "employee" under ERISA); Montesano v. Xerox Corp. Ret. Income Guaranty Plan, 117 F. Supp. 2d 147, 163 (D. Conn. 2000) (holding that plan that defined employee as "any common law employee who receives remuneration for personal services rendered to the employee and who is on the United States payroll of the employer" did not incorporate Darden principle), aff'd in relevant part, 256 F.3d 86 (2d Cir. 2001).

   For these reasons, the Court finds that Plaintiffs are entitled to summary judgment

in their favor as a matter of law as to their claim pursuant to ERISA § 502(a)(1)(B) that they were participants eligible to accrue and receive benefits pursuant to the Texaco Retirement Plan and Texaco Thrift Plan as in effect from January 1, 1995, through the termination of their work with Texaco and/or TEPI in or about 1999.  Their claims will be remanded to the Plan Administrator for the calculation and payment of benefits in accordance with the requirements of ERISA and the terms of the plans.  See McCauley, 551 F.3d at 137 (granting summary judgment in claimant's favor after finding that denial of benefits was arbitrary and capricious and that record conclusively showed that claimant was entitled to judgment as matter of law); Glenn v. MetLife, 461 F.3d 660, 675 (11th Cir. 2006) (remanding with directions to award benefits after finding that denial was arbitrary and capricious), aff'd, ___ U.S. ____, 128 S. Ct. 2343 (2008).

Relief Under ERISA § 502(a)(3)

As shown above, the Review Panel procedure employed following the Schultz II remand lacked even the rudiments of proper attention to the ERISA fiduciary duty standards applicable to claims determinations.  Insofar as the legal guidance provided to the novice claims reviewers by ChevronTexaco, the Plans' named fiduciary Plan Administrator, ignored the reviewers' lack of background in relevant legal principles and was entirely one-sided in its presentation of the plan interpretive issues presented to the Reviewers, it is apparent to this Court that proper consideration of Plaintiffs' benefit determinations will require independent legal advice for the members of any Review Panel designated by ChevronTexaco to perform that function upon remand.

Section 502(a)(3) of ERISA empowers the court to issue injunctive or "other appropriate equitable relief" to "enforce any provisions of this title or the terms of the plan."  The

Court finds that the appointment of an independent legal advisor to the Review Panel upon remand is, in light of the Plan Administrator's conduct following remand, appropriate equitable relief that is necessary to ensure compliance with ERISA's fiduciary provisions and proper application of the terms of the plans in connection with the required benefit determinations. ChevronTexaco must retain the independent advisor on behalf of the plan and must pay the fees and expenses of the independent legal advisor from its own corporate assets.  The advisor must be experienced in ERISA fiduciary and claims determination matters.  ChevronTexaco must notify the Court and Plaintiff's counsel of the identify and qualifications of the independent legal advisor within 21 days from the date of this Opinion and Order.

Plaintiff Weber's ERISA § 502(c) Claim

In Schultz II, the Court found that defendant Stoner and her delegees had clearly taken more than the statutorily-prescribed time to provide Weber with Plan documents after he had requested them.  Accordingly, the Court denied Defendant's motion for summary judgment dismissing his claim for statutory penalties pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c) (West 1999).  The parties have developed further the record with respect to the timing of the delivery of plan documentation to Weber, and it is undisputed that certain of the materials were delivered in 44 days rather than within the 30-day window provided by section 502(c).  29 U.S.C.A. § 1132(c) (West 1999).  Having considered all of the relevant events in connnection with this litigation, including the initial denial of any plan information to these plaintiffs, the citation of summary plan description language by Stoner in her original denial decision and the failure to respond promptly to a material portion of Weber's request, the Court exercises its discretion under ERISA § 502(c) to award Weber a penalty of $100 for each late day, for a total

penalty of $1400.  This penalty shall be paid to him by defendant Stoner, immediately.

Remaining Class Claims

   Plaintiffs have plead this case as a class action, but class certification motion

practice has been held in abeyance pending the resolution of the series of dispositive motions.

The parties are hereby directed to confer with each other promptly regarding settlement and

regarding the matters outlined below and, in the event settlement is not reached, to prepare and

file with the Court no later than March 31, 2009, position papers (not exceeding ten pages in

length) concerning the class certification issue and its interaction with the remaining aspects of

the ERISA § 502(a)(1)(B) and 502(a)(3) claims in light of this decision.  In particular, the

parties' discussions and position papers should address the propriety of class action treatment of

such § 502(a)(1)(B) claims, whether notices disseminated in connection with class action

litigation would suffice to remedy the plan administrators' failure to notify class members of the

1994 plan amendments in a timely and accurate manner, and whether an independent fiduciary or

legal advisor should be appointed in connection with plan participation eligibility and/or benefit

determinations with respect to any certified class.

SUMMARY OF CONCLUSIONS

   For the reasons explained above, Plaintiffs' application for reconsideration of the

dismissal of all of their ERISA § 502(a)(1)(B) claims is granted and those claims are reinstated

insofar as they are based on the 1994 amendments to the the Texaco Retirement Plan and the

Texaco Thrift Plan; Plaintiffs' motion for summary judgment is granted with respect to their

restored ERISA § 502(a)(1)(B) claims and those claims will be remanded for the calculation of

benefits;  Plaintiffs' motion for summary judgment on their ERISA § 502(a)(3) claim is granted

insofar as ChevronTexaco must retain and pay for an independent legal advisor for the Review Panel that will determine the named Plaintiffs' benefit entitlements under the plans; Plaintiff Weber is awarded a $1400 statutory penalty, which is to be paid immediately by defendant Stoner, pursuant to ERISA § 502(c); defendant Stoner's motion for summary judgment is granted as to Plaintiffs' ERISA § 502(a)(3) claim relating to the administration of the 1989 Texaco Retirement Plan and Thrift Plan; and the parties shall confer and to submit position papers by March 31, 2009, in accordance with the instructions set forth in the preceding paragraph. The motions are denied in all other respects.

The parties shall appear before the undersigned for a pre-trial conference on **April 14, 2009 at 4:30 p.m.** If the parties would benefit from the involvement of a Magistrate Judge in their discussions, they are to notify the undersigned so that an appropriate order of reference can be entered.

This Opinion and Order resolves docket entries 95 and 96.

This case is hereby designated an ECF case. All future filings must be made via the ECF system (with courtesy copies provided for Chambers) and counsel are directed to register promptly for ECF in connection with this case.

SO ORDERED.

Dated: New York, New York
February 24, 2009

LAURA TAYLOR SWAIN
United States District Judge